Curtis L. Espy v. Commissioner.
Espy v. Commissioner
Docket No. 18125.
United States Tax Court
1950 Tax Ct. Memo LEXIS 136; 9 T.C.M. (CCH) 623; T.C.M. (RIA) 50177; July 25, 1950
*136 Charlie W. Clark, Esq., for the petitioner. A. J. Hurley, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax against the petitioner for the calendar year 1944 in the amount of $994.30. The question is whether or not petitioner is entitled to a loss deduction of $3,500. Findings of Fact Petitioner is an individual residing in Phoenix, Arizona. He filed his income tax return for 1944 with the collector of internal revenue for the district of Michigan at Detroit. During the early part of 1942 petitioner lived with his wife Betty Espy in Chicago, Illinois. They had been married six or seven years. Some two years previously Betty Espy had filed suit for divorce and had been advised by petitioner that he would not contest the suit. Nothing further occurred and petitioner was under the impression that the suit had been dropped. In July of 1942, however, Betty, without advising petitioner, obtained a decree of divorce. He and Betty continued to live together in Chicago after the decree and in the late summer of 1942 they moved to Detroit, Michigan, and lived together there. Sometime during the *137 winter following, petitioner, in the course of his employment as an engineer, went to Indianapolis, Indiana. Betty left Detroit and went to Florida. From May 1943 until sometime in 1944 petitioner, from time to time, sent Betty money by check in amounts varying from $50 to $750. The amounts so paid by check totaled $2,925, most of which were transmitted in 1943, the 1944 payments being limited to four payments aggregating $250. On information received from Betty petitioner was of the impression that she had deposited some, if not all, of the money in the State Bank in Crestview, Florida. At sometime prior to November 8, 1943, petitioner learned of the divorce decree which had been obtained by Betty and on that date he remarried. The name of his new wife was E. Lucille. Petitioner was then living or stopping in Allentown, Pennsylvania. While there he bought a Pontiac automobile, title to which was taken in the name of E. Lucille Espy. Petitioner subsequently drove this car to Atlanta, Georgia, where he turned it over to Betty. In a letter dated December 5, 1944, and mailed from Chicago to petitioner at Highland Park, Michigan, Betty advised petitioner that she had married again. *138 She stated it was impossible for her to give him her address or telephone number, that she did want to talk to him and that if he should be in Detroit and her husband should go away for a few days she could get in touch with him "fast". She urged that he keep his "shirt on" and not jump at conclusions. She felt sure, she said, that by spring they could get a word in about past finances and asked that he be patient until spring if she was unable to contact him before. She expressed as her view that if he should "pop up on the scene" at that time it would only do her a lot of harm and wouldn't do him "any good". She said that her husband seemed to think she was all right and she wanted to keep it that way. Sometime after receipt of the above letter petitioner consulted a lawyer and in February 1945 caused a writ of replevin to be issued in the name of E. Lucille Espy seeking return of the Pontiac automobile. The writ was issued against Nellie Gates, alias Nellie Espy, alias Nellie Smith, alias Nellie McCullen, John Doe, and Mary Roe. On March 14, 1945, petitioner and his wife as parties of the first part and Nellie Espy Smith Gates, being his former wife Betty, as party of the second *139 part, entered into a written contract whereby in consideration of one dollar paid by each of the parties to the other and the release by Betty of the automobile and the certificate of title to petitioner and his wife, the parties each released the other "of and from any and all claim, demand, damage, or cause of action by reason of any cause or thing from the beginning of the world" to the date of said instrument. In his income tax return for 1944 petitioner deducted $3,500 as representing amounts previously paid to his former wife Betty Espy as a loss claimed to have been sustained by reason of embezzlement or larceny by bailee. In determining the deficiency herein the deduction so claimed was disallowed by the respondent. Opinion TURNER, Judge: It is the claim of the petitioner that he is entitled under section 23 (e) (3) [1] to the above claimed deduction as a loss due to larceny by his former wife as bailee. Respondent takes the position that the petitioner has failed to prove that Betty Espy had received and held money or property belonging to petitioner and further, if Betty Espy did have money or property belonging to petitioner then petitioner has failed to show that he *140 sustained any loss with respect thereto in the year 1944. Most of the evidence offered was the oral testimony of the petitioner. His testimony was in the main vague and indefinite. His responses were replete with statements to the effect that he did not remember and at times his answers were contradictory of statements previously made. It is impossible, therefore, to get a clear and definite picture of just what did transpire between petitioner and his former wife, Betty Espy, with respect to moneys and property which petitioner claims he turned over to her. Generally his testimony was that while they were living in Detroit it was agreed that he would turn various sums of money over to her which she would accumulate and hold until the end of the war, when they *141 would erect and operate a drive-in "barbecue" stand in Florida, that he started turning various amounts over to her while they were in Detroit and continued that practice until early in 1944, that the total of the amounts so given to Betty was in the neighborhood of $13,000, and that he continued to make payments to her after he learned she was no longer his wife because he thought she was a "very good business woman", they were good friends even though divorced and he felt they could build a very successful business enterprise. He also testified he had given to her for sale several automobiles, including the Pontiac, title to the Pontiac having been taken in the name of his later wife. Further, his testimony was that he had no thought that she was not holding the money covering the amounts paid over to her and the proceeds from the sale of the automobiles until he learned she had returned to Chicago, had remarried, had not sold the Pontiac, and had refused to return the Pontiac to him, saying that she wanted it to run around in and that its return to him would cause trouble between her and her husband. It was the receipt of this information, according to the testimony, that caused *142 petitioner to stop making payments to Betty. When asked by the Court to supply the factual basis for claiming he sustained a loss of $3,500 in 1944 he testified that it was in the spring of 1944 that he learned of Betty's marriage and that she had not sold the Pontiac, that it was then that she refused to return the Pontiac or any of the money advanced and after consulting a lawyer also in 1944 and the making of a search it was concluded that Betty had put what she had somewhere where they could not find it. He would not say, however, that Betty even then was financially irresponsible but only "that whatever she had done with the monies, and so forth" they would not be able to find them. Later, on cross examination, petitioner testified he was not sure that it was in 1944 or 1945 that he learned of Betty's marriage and that she had failed to sell the Pontiac and had refused to return the Pontiac or the money. Still later his testimony was that it was after he had received the letter of December 5, 1944 that these things occurred and they must have occurred in 1945. Considering the confused state of the record, the indefiniteness of much of petitioner's testimony, the contradictions *143 therein, and the lack of clarity in many of his statements, we have been unable to find facts beyond those set forth above and so designated. The facts so found fall far short of supplying the necessary factual support for petitioner's claim of loss in 1944. About the only events related to petitioner's dealings with Betty which can definitely be placed in 1944 were the transmission of $250 to Betty in four checks, the last of which was dated January 28, 1944, and the mailing of the letter of December 5, 1944 by Betty to petitioner. Assuming an arrangement between petitioner and Betty such as would make of her an embezzler if she appropriated to her personal uses the funds petitioner had paid or turned over to her, we are still unable to say on the established facts that she did embezzle the funds or if she did so embezzle them the embezzlement took place in 1944. While petitioner did say that he and his lawyer did conclude, after investigation in 1945, that Betty had successfully concealed any money or property she might have had except the Pontiac, it is not at all definite and clear that petitioner would have taken action to recover the Pontiac if it had not been for the feelings *144 of his wife, Lucille. Furthermore, the giving of mutual releases between petitioner and Lucille on the one hand and Betty on the other in settlement of the replevin proceeding may well have been some indication that Betty had some defense, whether or not conclusive, against any further claims of petitioner against her. Accordingly, it is our conclusion and we find that petitioner has not sustained his claim of loss in 1944. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. * * *↩